No. 89-266

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

LESLIE D. KRIEG,

        Plaintiff and Appellant,

  -vs-

DEWEY E. MASSEY, and FLORENCE E.
MASSEY, individually and d/b/a MASSEY
APPARTMENTS; and BETTY J. YOUNG, a/k/a
B.J. YOUNG,

        Defendants and Respondents.

APPEAL FROM: District Court of the Thirteenth Judicial District,
            In and for the County of Yellowstone,
            The Honorable Diane Barz, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        K. D. Peterson; Peterson, Schofield & Leckie, Billings,
        Montana

    For Respondent:

        James R. Halverson; Herndon, Hartman, Sweeney and
        Halverson, Billings, Montana

Submitted on Briefs: Aug. 17, 1989

Decided: October 24, 1989

Filed:

_____
               Clerk

'89 OCT 24 AM 10 16 FILED
ED SMITH, CLERK
MONTANA SUPREME COURT

Justice Fred J. Weber delivered the Opinion of the Court.

The plaintiff, Leslie D. Krieg, brought this wrongful death action founded on negligence for failure of defendants to prevent the suicide of his 77 year-old uncle, Arthur Leslie Van Hoose. The District Court for the Thirteenth Judicial District, Yellowstone County granted defendants' motion for summary judgment and dismissed the case with prejudice. From this judgment, Mr. Krieg appeals. We affirm.

The sole issue is: Did the District Court err in granting summary judgment in favor of defendants?

Masseys are the owners and operators of the Massey Apartments in Billings, Montana. When Mr. Van Hoose moved into the Massey Apartments, Mr. Massey introduced Mr. Van Hoose to the apartment manager, Mrs. Young, an elderly lady in her seventies.

The next day, Mr. Van Hoose told Mrs. Young he was having leg and stomach pain. Mrs. Young offered the use of her phone to Mr. Van Hoose so that he could call a doctor. He declined. She then offered to take him to the hospital to see a doctor. He accepted this offer, however, Mrs. Young told him she was expecting her daughter and would have to wait until her daughter arrived.

Later, when Mrs. Young was walking past Mr. Van Hoose's room, his door was open and she noticed he was walking around the room holding a pistol. Mrs. Young told him not to point the gun at her. He responded with, "Guns take care of all problems." Mrs. Young stated, "It doesn't take care of problems, it causes problems." She then took the pistol from Mr. Van Hoose with the intention of taking it to her apartment. When Mr. Van Hoose protested, she obtained a chair from the kitchen, climbed up on the chair and put the pistol

2

on the top of a closet, thinking he would leave it alone. Mr. Van Hoose appeared calmer and Mrs. Young repeated that she would take him to the doctor, then left. She did nothing else about the gun incident.

Approximately an hour later, Mrs. Young heard a loud "thud." She was not concerned about the noise until the thought occurred to her that Mr. Van Hoose may have climbed up on the chair to get the pistol, and fallen off. She then went back to his apartment and discovered he had killed himself with the pistol.

Did the District Court err in granting summary judgment in favor of defendants?

We begin by emphasizing that summary judgment is never a substitute for a trial on the merits. Kronen v. Richter (1984), 211 Mont. 208, 211, 683 P.2d 1315, 1317. It is only appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P. Any inferences to be drawn from the factual record must be resolved in favor of the party opposing summary judgment. Simmons v. Jenkins (1988), 750 P.2d 1067, 45 St.Rep. 328.

In its summary judgment the District Court relied on the general rule that:

> Negligence actions for the suicide of another will generally not lie since the act or suicide is considered a deliberate intervening act exonerating the defendant from legal responsibility, noted the court, but two exceptions to this general rule exist:
>
> a. [W]here the defendant's tortious act causes a mental condition in the decedent that proximately results in an uncontrollable impulse to commit suicide or that prevents the decedent from realizing the nature of his act;

3

b.  [W]here there is a duty to prevent the suicide, the situation typically arising when someone is obligated to exercise custodial care over the eventual decedent, is in a position to know about the latter suicidal potential, and is lax with respect to taking preventive measures.

41 ALR 4th, 353.

The District Court then found that the relationship between Mr. Van Hoose and Mrs. Young was non-custodial and that there was no evidence that Mr. Van Hoose's suicide was a foreseeable event. The court therefore concluded that Mrs. Young owed no duty to prevent Mr. Van Hoose's suicide.

Plaintiff contends that when Mrs. Young entered Mr. Van Hoose's room and attempted to take the pistol away, she imposed upon herself a duty to prevent the suicide. Plaintiff urges that Mrs. Young breached this duty because she was negligent in her intervention. He claims she could have prevented the suicide of Mr. Van Hoose by removing the pistol.

It is fundamental that an action for negligence requires 1) a legal duty, 2) a breach of the duty, 3) causation, and 4) damages. Prosser and Keeton on Torts, § 30, at 164-165 (5th ed. 1984); R.H. Schwartz Const. Specialties v. Hanrahan (1983), 207 Mont. 105, 672 P.2d 1116. Traditionally, a person is not liable for the actions of another and is under no duty to protect another from harm in the absence of a special relationship of custody or control. If originally, no special relationship existed, but the defendant interjects himself into the situation so as to create a special relationship of control, a duty may be imposed. Prosser and Keeton on Torts, § 56 at 375-377, (5th ed. 1984).

Defendant relies on Pretty on Top v. Hardin (1979), 182 Mont. 311, 597 P.2d 58, as authority that no duty arose.

That case involved a custodial situation of a jailer and a prisoner. When the prisoner committed suicide the wife claimed the prison had a duty to prevent the suicide. However, in Pretty on Top this Court affirmed the district court's grant of summary judgment in favor of defendant since the suicide of the prisoner was not foreseeable. Since foreseeability was lacking we stated that the district court was required to follow the general rule that suicide is an intentional act and grant defendant's motion for summary judgment. Pretty on Top, 597 P.2d at 60.

The same rule applies even more forcefully in the present case. The general rule, as relied upon by the District Court, in the area of civil liability for suicide is that "[n]egligence actions for the suicide of another will generally not lie since the act or suicide is considered a deliberate intervening act exonerating the defendant from legal responsibility . . ." 41 ALR 4th, 353. Prosser and Keeton on Torts § 44 at 280-81 (4th ed. 1971); McPeake v. Cannon Esquire, P.C. (Pa.Super. 1989), 553 A.2d 439; McLaughlin v. Sullivan (N.H. 1983), 461 A.2d 123. We expressly adopt this rule.

There are two narrow exceptions to this rule. The first exception deals with causing another to commit suicide and is not applicable to the present case. The second exception allows the imposition of a duty to prevent suicide but only in a custodial situation where suicide is foreseeable. These situations typically involve hospitals or prisons. 41 ALR 4th at 353.

The facts of the present case clearly do not fit within this exception to the general rule. As the District Court found, Mrs. Young was not in a custodial relationship with Mr. Van Hoose. He had lived in her apartment less than two days and she had no control over him. Our research has

5

disclosed no cases holding that a landlord tenant relationship is a custodial relationship which would impose a duty to prevent suicide. We agree with the District Court that there are no genuine issues of material fact on the existence of a custodial relationship. The fact that there was no custodial relationship or special circumstances, actually ends our inquiry because no duty can be established.

The District Court, however, went on to determine that the suicide in this case was not foreseeable. Mrs. Young testified that she did not think Mr. Van Hoose should have the gun, but that she did not think he was planning on killing himself. When asked why she put the gun on top of the closet, she said, "I figured he'd leave it alone." She then returned to her own apartment. Plaintiff failed to present any evidence to show that Mr. Van Hoose's suicidal tendencies had been communicated to Mrs. Young. Further, nothing indicates that she had any special training to foresee that Mr. Van Hoose intended suicide. We conclude that no genuine issue of material fact existed regarding foreseeability.

Plaintiff, however, urges that because Mrs. Young "interjected herself into the situation" by taking the gun from Mr. Van Hoose, she imposed a duty upon herself. He contends that she then breached this duty by negligently placing the gun on top of the cabinet rather than removing it. We decline to affirm plaintiff's contention that Mrs. Young's actions created a duty to prevent suicide since, as previously stated, the general rule is that no duty exists in this area absent a custodial relationship or special circumstances. However, even if a duty had arisen, the acts of Mrs. Young placed Mr. Van Hoose in no worse position than before she took the gun from him. We conclude that there are no genuine issues of material fact on the issue of negligence. Plaintiff failed to present the District Court with any facts

6

which would establish either a duty or a breach. The general rule that suicide is an intentional act which forecloses civil liability is applicable, and the District Court was correct granting summary judgment in favor of defendants. We affirm the District Court's grant of summary judgment.

_____
Justice

We concur:

_____
Chief Justice

_____
_____
_____
Justices