No. 90-566

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

LEO F. MARAZZATO, SR., Acting as Personal Representative on Behalf of the Heirs and Successors in Interest of LEO F. MARAZZATO, JR.,

Plaintiff and Appellant,

-vs-

BURLINGTON NORTHERN RAILROAD COMPANY, a Delaware Corporation,

Defendant and Respondent.

APPEAL FROM:   District Court of the Fourth Judicial District,
               In and for the County of Missoula,
               The Honorable Robert S. Keller, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

            Don C. Aldrich, William G. Jungbauer, Patrick R.
            Gillespie; Yaeger & Yaeger, Minneapolis, Minnesota.
            John W. Larson, Missoula, Montana.

        For Respondent:

            Randy J. Cox; Boone, Karlberg & Haddon, Missoula,
            Montana.

Submitted on briefs: May 31, 1991

Decided: August 29, 1991

Filed:

FILED

AUG 29 1991

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

_____
Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

Plaintiff, Leo F. Marazzato, Sr. (Mr. Marazzato), is the father and personal representative of Leo F. Marazzato, Jr. (the decedent). Mr. Marazzato brought this Federal Employers' Liability Act (FELA) action in the District Court for the Fourth Judicial District, Missoula County, seeking emotional distress damages suffered by the decedent prior to the decedent's death by suicide, and for the pecuniary loss the parents suffered after the decedent's death. The District Court granted Burlington Northern's Motion for Summary Judgment concluding that Mr. Marazzato had not established that it was foreseeable by Burlington Northern that its actions would result in the decedent's suicide. Mr. Marazzato appeals. We affirm.

The revised dispositive issue is: Did the District Court correctly conclude that the plaintiff failed to present sufficient proof to establish that Burlington Northern knew or should have known that assignment to an unsupervised rubber room could have resulted in forseeable harm to the decedent?

The decedent worked as a clerk for Burlington Northern from 1976 until his suicide in March, 1988. Under a collective bargaining agreement, he was a "merger protected" employee which means that Burlington Northern was obligated to pay his wages even if it had no work for him to do. Upon sale of Burlington Northern's southern line to Montana Rail Link, Burlington Northern had more clerks in Missoula than needed. Beginning March 14, 1988, the decedent was assigned to an Alternative Work Location (known

as a "rubber room" by employees) in Missoula. Employees who were assigned to the rubber room were required to report to the room for work shifts but had no work to do. The employees were free to read, watch television, play cards, and otherwise entertain themselves. There were no supervisors available or in attendance in the rubber room.

On March 22, 1988, the decedent was notified that he was being transferred to Havre, Montana. He had the option of accepting the transfer by reporting to work in Havre within 20 days, taking a six month leave of absence without pay, or resigning and accepting a separation allowance.

Evidence in the form of affidavits, depositions, and medical records show that the decedent's mental health deteriorated rapidly during the month of March. The decedent threatened to commit suicide several times during the month. On March 27, 1988, his Mother called the police and the decedent agreed to enter the hospital under the care of a psychiatrist. He was released the following day. That same day he received another letter indicating that it had come to the attention of Burlington Northern that his "home zone" was in Helena, Montana and that he was being reassigned to the rubber room in Helena. On March 29, 1988, the decedent bought a gun at a second-hand shop, drove up to the South Hills area of Missoula and killed himself.

Mr. Marazzato argues that the decedent's assignment to the unsupervised rubber room caused his mental and emotional condition which was the direct and proximate result of Burlington Northern's

3

negligence in failing to provide the decedent with a safe place to work in violation of FELA [45 U.S.C. § 51, et seq.]. The District Court granted summary judgment to Burlington Northern on the basis of foreseeability. Mr. Marazzato contends that the District Court erred because affidavits from expert witnesses sufficiently established foreseeability of harm to reach the jury in a FELA case.

Dr. James C. Deming, licensed psychologist from Bozeman, Montana, and Dr. Marie-Claude Rigaud, licensed psychiatrist from Aurora, Illinois, presented affidavits after analyzing the medical records and depositions available in this case. Both experts concluded that the decedent was suffering from major depression and dependent personality disorder prior to his death. Dr. Deming also concluded that decedent's behavior was consistent with "isolation stress" similar to the reactions found among military personnel stationed at isolated military stations.

Dr. Rigaud observed that the decedent had been under the effect of a multitude of moderate to severe job stressors for some time before his assignment to the rubber room. Those earlier stressors included two imposed job transfers which involved change, deprivation of the support of significant others, perception of inadequate preparation and training to do the job safely and effectively, and poor fit between the individual and his environment. His responses to those stressors were expressed fears, depression, and feelings of loneliness and emptiness, as well as insecurity and job dissatisfaction. The organization

4

changes within the company added new stressors such as uncertainty about his employment future. Confinement in the rubber room without identified objectives or well-defined expectations as to what was to be achieved resulted in boredom and lack of meaningful purpose which created additional stressors. Based on these observations, Dr. Rigaud came to the following conclusions:

> (1) The conditions of [decedent's] employment at [Burlington Northern] constituted major traumata which led to a progressive emotional deterioration, and eventually to his latest episode of agitated suicidal depression.
>
> (2) Additionally, acute stressors which came to bear after his discharge from the hospital further exacerbated an already precarious condition and led to more psychological distress, acute despair, confusion, impaired reality testing and judgment.
>
> (3) [Decedent] killed himself as a result of an irresistible impulse brought about by his emotional condition described above.
>
> (4) [Burlington Northern] should have been able to foresee the potentially detrimental impact that such stressful working conditions would have had on their employees. At the least, the company should have assigned a supervisory personnel who could have observed and monitored such effects as they were becoming evident.

Mr. Marazzato asserts these expert conclusions were sufficient to establish foreseeability in a FELA case.

Under FELA, the test of whether a case should go to a jury is simply whether the evidence justifies with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. Rogers v. Missouri Pac. R.R. (1957), 352 U.S. 500, 506. Mr. Marazzato cites Rogers for the proposition that FELA is liberally construed to require only a slight amount of foreseeability to get a FELA

5

case to a jury. The <u>Rogers</u> Court went on to say "[i]t does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence." <u>Rogers</u>, 352 U.S. at 506. It is obvious from this statement that the <u>Rogers</u> case was addressing the issues of multiple causes and contributory negligence after it had been established that the employer was negligent. Also see Gallick v. Baltimore & Ohio R.R. (1963), 372 U.S. 108, 116; Barilla v. Atchison, Topeka & Santa Fe Ry. (D.Ariz. 1986), 635 F.Supp. 1057, 1059.

The plaintiff has the burden of proving that defendant's negligence was the proximate cause in whole or in part of plaintiff's [death]. <u>Barilla</u>, 635 F.Supp. at 1059. Reasonable foreseeability of harm is an essential ingredient of FELA negligence. <u>Gallick</u>, 372 U.S. at 117.

Mr. Marazzato has failed to provide any proof that Burlington Northern knew or should have known that assignment of the decedent to an unsupervised rubber room created a reasonable possibility of harm. Affidavits of medical experts that establish a medical theory do not demonstrate knowledge on the part of Burlington Northern. We agree with the conclusion of the District Court that FELA

> . . . requires <u>some</u> proof before being submitted to the jury; here there is no suggestion of any kind in any of the evidence submitted to the Court that would give rise to a finding of foreseeability with respect to a suicide arising from the use of the [rubber room], by any of the employees, or by this specific employee.

We hold that the District Court did not err in concluding that Mr.

6

Marazzato failed to establish reasonable foreseeability of harm absent sufficient facts to constitute notice to Burlington Northern.

Mr. Marazzato argues that he was prevented from establishing Burlington Northern's knowledge of the effects of rubber rooms on the employees because the District Court granted Burlington Northern's Motion for a Protective Order during discovery. There is no basis for Mr. Marazzato's contention. While it is true that the District Court did grant Burlington Northern protection as to several interrogatories, the District Court denied the motion as to Interrogatory No. 30 which stated:

> Please identify each and every paper, study, report and memoranda outlining the actual, possible or anticipated mental or emotional impact or the use of "rubber rooms" on employees such as plaintiff's decedent which Burlington Northern has in its possession or has access to.

Through Interrogatory No. 30, Mr. Marazzato had access to all documents in Burlington Northern's possession that could have established Burlington Northern's knowledge. Mr. Marazzato failed to prove that Burlington Northern should have foreseen harm to the decedent.

We hold that the District Court correctly concluded that the plaintiff failed to present sufficient proof to establish that Burlington Northern knew or should have known that assignment to an unsupervised rubber room could have resulted in foreseeable harm to the decedent.

Affirmed.

_____
Justice

7

We Concur:

_____
Chief Justice

_____

_____
Justices

Justice Terry N. Trieweiler specially concurring.

I concur in the result achieved by the majority's opinion. However, I would arrive at the same conclusion for different reasons.

Plaintiff sought two separate types of damages in the District Court. He sought damages for the decedent's emotional distress, which he alleged was negligently caused prior to decedent's death, and he sought damages which resulted because of decedent's death. Both claims were dismissed based on lack of foreseeability. However, plaintiff raised two issues on appeal:

1. Whether an FELA claimant may recover damages for emotional injuries which are negligently inflicted, even though there is no physical injury or threat of physical harm; and

2. Whether he had offered sufficient evidence on the issue of foreseeability to overcome defendant's motion for summary judgment.

Because plaintiff's action was brought pursuant to the Federal Employers' Liability Act, the conduct which gives rise to a cause of action and the nature of damages recoverable are controlled by federal statutes and case law.

The only case law cited by either of the parties which appears to clearly allow recovery for negligent infliction of emotional distress is *Buell v. Atchison, Topeka & Santa Fe Ry. Co.* (9th Cir. 1985), 771 F.2d 1320, 1324. However, *Buell* was reversed by the United States

Supreme Court in *Atchison, Topeka & Santa Fe Ry. Co. v. Buell* (1987), 480 U.S. 557, 107 S.Ct. 1410, 94 L.Ed.2d 563. Plaintiff has cited this Court to no federal decisional law since reversal of the *Buell* decision, which clearly allows recovery for the negligent infliction of emotional distress absent infliction of physical harm to the plaintiff.

Montana has allowed recovery for negligent infliction of emotional distress under limited circumstances which are not present in this case. *Versland v. Caron Transport* (1983), 206 Mont. 313, 322-23, 671 P.2d 583, 588. However, we have been reluctant to extend the cause of action beyond those circumstances described in *Versland*. *Day v. Montana Power Co.* (1990), 242 Mont. 195, 789 P.2d 1224.

While there may be sound public policy arguments for extending the circumstances under which a cause of action for negligent infliction of emotional distress may be presented, I do not believe that the railroad workplace is the place to begin, absent some authority from the federal decisions or statutes.

I would affirm the District Court's judgment dismissing that part of plaintiff's claim which relates to the decedent's suicide based on the following general rule set forth in *Krieg v. Massey* (1989), 239 Mont. 469, 781 P.2d 277:

> The general rule, as relied upon by the District Court, in the area of civil liability for suicide is that "[n]egligence actions for the suicide of another will generally not lie since the act or suicide is considered a deliberate intervening act exonerating the defendant

10

from legal responsibility . . ." 41 ALR 4th, 353. Prosser and Keeton on Torts § 44 at 280-81 (4th ed. 1971); *McPeake v. Cannon Esquire, P.C.* (1989), 381 Pa.Super. 227, 553 A.2d 439; *McLaughlin v. Sullivan* (1983), 123 N.H. 335, 461 A.2d 123. We expressly adopt this rule.

*Krieg*, 239 Mont. at 472-73, 781 P.2d at 279.

The plaintiffs sought to survive summary judgment by coming within the following exception to the general rule:

> a. [W]here the defendant's tortious act causes a mental condition in the decedent that proximately results in an uncontrollable impulse to commit suicide or that prevents the decedent from realizing the nature of his act . . . .

*Krieg*, 239 Mont. at 471, 781 P.2d at 278.

However, there was no substantial evidence in this record that decedent took his life because of a mental condition caused by defendant's tortious act. The tortious act alleged by plaintiff was defendant's failure to supervise the work site to which plaintiff's decedent was confined. However, there was no evidence that that lack of supervision contributed in any way to the mental condition which resulted in decedent's suicide. In fact, the evidence, including decedent's medical records and the history reconstructed by the plaintiff's own consultants, indicates that the mental condition which led to decedent's suicide was caused by notice to him that he was being transferred to a new location where he would be apart from his parents and without friends.

11

Furthermore, decedent's suicide did not occur at the work place. It occurred in a remote area near Missoula after he had been discharged from the care of professional psychologists or psychiatrists. Had there been indications of despondency or depression while at work which could have been detected by closer supervision, nothing more could have been expected from defendant than a referral to the health care professionals who ultimately saw and treated decedent shortly before his suicide. Therefore, I would conclude that decedent's suicide was a deliberate intervening act exonerating defendant from legal responsibility for decedent's death, and on that basis affirm the District Court.

Justice