No. 93-443

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

GINA L. MORTON,

     Plaintiff and Appellant,

  v.

M-W-M, INC., a Montana corporation,

     Defendant and Respondent.

APPEAL FROM:  District Court of the Eighth Judicial District,
               In and for the County of Cascade,
               The Honorable John M. McCarvel, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

     John F. Lynch, Lynch Law Firm, Great Falls, Montana

     For Respondent:

     Richard Dzivi and Tonja D. Schaff, Richard Dzivi,
     P.C., Great Falls, Montana

FILED

FEB 01 1994

Filed:    *Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Submitted on Briefs:  December 22, 1993

Decided:  February 1, 1994

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Plaintiff Gina L. Morton (Morton) appeals from a decision of the Eighth Judicial District Court, Cascade County. The court entered summary judgment in favor of the defendant, M-W-M, Inc. (M-W-M), owner of Burger King Franchise No. 1666 in Great Falls, Montana, after concluding that there were no disputed issues of fact and that an agent at the company's franchise had good cause to terminate Morton's employment as an assistant manager. We reverse and remand.

The issues on appeal are rephrased as follows:

1. Whether the District Court erred by granting summary judgment to M-W-M after concluding there were no disputed issues of fact and concluding good cause existed for Morton's termination from the Burger King franchise;

2. Whether Morton mitigated any damages allegedly due her by working full-time at another job after her termination from Burger King.

Morton began employment with M-W-M's franchise, Burger King No. 1666, in Great Falls during September 1989. She worked her way up through the ranks in less than a year, earning an assistant manager position on May 18, 1990. Her written performance evaluations at Burger King were mostly exceptional with no less-than-satisfactory work traits mentioned. Her position at Burger King was part-time, and the unofficial policy there offered Morton

a very flexible work schedule dependent in part on her husband's work schedule and the child-care needs of their family.

As a matter of unwritten policy, the general manager of Burger King No. 1666, Matt Blazicevich (Blazicevich), voluntarily agreed to schedule Morton for work according to her scheduling requests. Morton was the sole part-time assistant manager.

Vacation time offered by Burger King came in one of two forms: paid leave or unpaid time off. Frequently, employees would request unpaid time off by leaving a note with Blazicevich. He often would then voluntarily refrain from scheduling the employee according to the employee's request.

During April of 1992, Morton requested vacation time; Blazicevich responded that if Morton were to wait until May, she would be eligible for two weeks vacation. Paid leave vacation for managers at Burger King was offered at two weeks for two years of service, and Morton was nearing the second anniversary of the date she was promoted to assistant manager. On April 20, then, Morton left a note with Blazicevich requesting the first two weeks of May 1992, off for the purpose of attending to her family's needs while her husband was in job training. Her note further requested that she work the following shifts during May: Tuesday and Wednesday, the 19th and 20th; and Saturday and Sunday, the 30th and 31st. Blazicevich scheduled her accordingly. On the same day, April 20, 1992, Morton filled out an application to work a second job at the Black Angus restaurant.

3

Historically the Burger King franchise permitted moonlighting as long as the second job did not conflict with the Burger King work schedule and as long as the second job did not involve a Burger King competitor. Near the end of April 1992, Blazicevich learned from a neighbor that one of his Burger King employees was moonlighting at the Black Angus restaurant in Great Falls. Blazicevich went to the Black Angus on May 4, 1992; he saw Morton working. On the next day, when Morton went into Burger King to pick up her paycheck, Blazicevich terminated her employment without explanation. She initiated wrongful discharge proceedings.

M-W-M moved the court for summary judgment, stating that the following discrepancies enabled Blazicevich to terminate Morton for good cause: she did not make herself available for part-time work, she was working for a competitor of Burger King, and she was dishonest. M-W-M also alleged that Morton suffered no damages as a result of her termination from employment, because she was employed at the Black Angus.

Morton stated that she followed Burger King policy when requesting and obtaining her vacation and that she originally requested vacation time to attend to her family's needs while her husband was in training. After obtaining the vacation time, she found a babysitter for her children and interviewed for the Black Angus job on April 30. She got the job and started work there on May 1st, 1992. Additionally, Morton contended that the Black Angus restaurant is not a competitor of Burger King.

4

The District Court granted summary judgment to M-W-M. Morton appeals.

## ISSUE 1

Did the District Court err by granting summary judgment to M-W-M after concluding there were no disputed issues of fact and concluding good cause existed for Morton's termination from employment?

Our standard of review when considering an appeal from a summary judgment decision is the same as that which was faced by the district court under Rule 56, M.R.Civ.P. Minnie v. City of Roundup (1993), 257 Mont. 429, 431, 849 P.2d 212, 214. Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56, M.R.Civ.P. Summary judgment is never a substitute for a trial on the merits. Krieg v. Massey (1989), 239 Mont. 469, 471, 781 P.2d 277, 278.

The party seeking summary judgment bears the burden to show the court that it has met the standards set forth in Rule 56, M.R.Civ.P. D'Agostino v. Swanson (1990), 240 Mont. 435, 442, 784 P.2d 919, 924. The court must review both the pleadings and the record before it in making its decision. D'Agnostino v. Schapp (1988), 230 Mont. 59, 748 P.2d 466, citing Rule 56(c), M.R.Civ.P. When examining the record, any factual inferences which can be drawn must be resolved in favor of the nonmoving party. Krieg, 781

P.2d at 278; Cereck v. Albertsons, Inc. (1981), 195 Mont. 409, 637 P.2d 509.

If the moving party has met its burden of proof, the nonmoving party has the burden of showing that a genuine issue of material fact exists or that the moving party is not entitled to judgment as a matter of law. Krieg, 781 P.2d at 278; Rumph v. Dale Edwards, Inc. (1979), 183 Mont. 359, 600 P.2d 163. The nonmoving party may not rely solely on the allegations stated in its pleadings. Drug Fair Northwest v. Hooper Enterprises, Inc. (1987), 226 Mont. 31, 33, 733 P.2d 1285, 1287. Instead, when raising the allegation that disputed issues of fact exist, the nonmoving party has an affirmative duty to respond by affidavits or other sworn testimony containing material facts that raise genuine issues; conclusory or speculative statements will not suffice. Barich v. Ottenstror (1976), 170 Mont. 38, 42, 550 P.2d 395, 397.

The summary judgment in the instant case is based on the lower court's findings of fact and conclusion that there were no disputed issues of fact. These findings and conclusion are not supported by the record. In order to articulate the disputed issues, we first examine the law surrounding Morton's wrongful discharge claim.

Under the Wrongful Discharge from Employment Act a valid ground for maintaining a cause of action against a former employer is when the employee's "discharge was not for good cause and the employee had completed the employer's probationary period of employment." Section 39-2-904(2), MCA. The act defines good cause

6

as "reasonable job related grounds for dismissal based on a failure to satisfactorily perform job duties, disruption of the employer's operation, or other legitimate business reasons." Section 39-2-903(5), MCA. Deposition testimony by Blazicevich and Morton establishes that Morton was not terminated for unsatisfactory performance and that she had passed her probationary period of employment. The issue, therefore, is whether Morton's termination was justified by a legitimate business reason.

This Court has previously defined legitimate business reason as "a reason that is neither false, whimsical, arbitrary or capricious, and it must have some logical relationship to the needs of the business." Kestell v. Heritage Health Care Corp. (Mont. 1993), 858 P.2d 3, 7, 50 St.Rep. 919, 922, citing Buck v. Billings Montana Chevrolet, Inc. (1991), 248 Mont. 276, 281-82, 811 P.2d 537, 540. As we stated in Kestell, 858 P.2d at 7-8:

> It is well settled in our pre-[wrongful discharge]Act cases that courts should not intrude in the day-to-day employment decisions of business owners. . . . An employer's legitimate right to exercise discretion over whom it will employ must be balanced, however, against the employee's equally legitimate right to secure employment. . . . The balance should favor an employee who presents evidence, and not mere speculation or denial, upon which a jury could determine that the reasons given for his termination were false, arbitrary or capricious, and unrelated to the needs of the business. [Citations omitted].

When considering M-W-M's motion for summary judgment, the court first entertained M-W-M's assertion that no disputed issues of fact existed. The court specifically asked counsel for Morton

7

whether any disputes of fact were involved in this case; Morton's counsel replied that there were none.

That reply was erroneous. The record before us is brief, consisting of various court filings and certain pieces of discovery including two depositions, one from Blazicevich and one from Morton. After reviewing the record, we conclude that contrary to the District Court's findings, material issues of fact exist, including whether Morton's vacation request was made according to Burger King policy; whether the Black Angus is a competitor of Burger King; and whether Morton misled her employer to obtain vacation time to work at a second job. The District Court's findings of fact relating to the above disputed issues are not supported by the record and are, therefore, clearly erroneous. See Interstate Prod. Credit Ass'n v. DeSaye (1991), 250 Mont. 320, 820 P.2d 1285.

Where the record shows genuine issues of fact and the parties relate widely divergent reasons for Morton's termination, the trier of fact must resolve those issues and determine whether Morton was fired for good cause. See Dare v. Montana Petroleum Marketing Co. (1984), 212 Mont. 274, 282, 687 P.2d 1015, 1019. Here, each party argues the above disputed facts in each respective brief. We conclude that in this record there are material fact issues that cannot be disposed of by summary judgment and this issue is remanded for proceedings consistent with this opinion.

8

## ISSUE 2

Did Morton mitigate any damages allegedly due her by working full-time at a restaurant after her termination from Burger King?

In its conclusions of law the District Court states:

> Plaintiff mitigated any damages she may have been entitled to if this Court would have found a wrongful discharge. Plaintiff is a full-time employee at the Black Angus Restaurant, earning more than she earned at Burger King No. 1666. Accordingly, even if Plaintiff was wrongfully discharged, she suffered no damages, rendering Defendant, M-W-M Inc., entitled to summary judgment.

The court failed to note, however, that Morton's second job at the Black Angus was presumably compatible in hours to the requirements of her first, part-time job at Burger King. We hold that the court's finding was clearly erroneous because Morton could have worked both jobs concurrently and the loss of earnings she suffered as a result of termination from Burger King are necessarily part of her wrongful discharge claim. On remand, the issue of mitigation of damages for appellant's loss of employment at M-W-M remains to be resolved.

Reversed and remanded.

_____
Chief Justice

9

We concur:

_John Conway Harrison_

_William E Hunt_

_[signature]_

_[signature]_ Justices

February 1, 1994

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


JOHN F. LYNCH
Lynch Law Firm
P.O. Box 2265
Great Falls, MT  59403

Richard Dzivi
Tonja D. Schaff
RICHARD DZIVI, P.C.
P.O. Box 1291
Great Falls, MT 59403-1291


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
   Deputy