Patricia J. STROUP, as Personal Repre-
sentative of the Estate of Scot Owen
Stroup, Deceased, and on behalf of Pa-
tricia J. Stroup, Diana K. Finch and
Polly Ann Beyer, Appellant (Plaintiff),

v.

Byron OEDEKOVEN, Sheriff of
Campbell County, Wyoming,
Appellee (Defendant).

No. 98–104.

Supreme Court of Wyoming.

Dec. 28, 1999.

Representing Appellant: H.W. Rasmussen of Badley & Rasmussen, P.C., Sheridan, WY.

* Retired November 2, 1998.

Representing Appellee: Gary R. Scott of Hirst & Applegate, P.C., Cheyenne, WY.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and TAYLOR,* JJ.

LEHMAN, Chief Justice.

After an inmate committed suicide while in the custody of the Campbell County Detention Center, his survivors instituted this wrongful death action against the Campbell County Sheriff. A four-day bench trial resulted in judgment for the sheriff. In this appeal, the survivors assert that the district court abused its discretion in refusing to grant a jury trial even though their demand for jury trial was over four months tardy. In addition, although the district court found the decedent's fault to be 0%, they contend that the decedent's intentional conduct in committing suicide should not have been considered in assessing fault under Wyoming's comparative fault statute. Finally, the survivors argue that the district court's findings are not supported by the record. Finding no error, we affirm.

### ISSUES

Appellant presents three issues for our review:

I. Did the trial court abuse its discretion by denying Plaintiff's Motion for Jury Trial[?]

II. Is Wyoming's Comparative Fault Statute § 1–1–109 applicable to a claim for failure to prevent suicide of an inmate?

III. Are the Findings of Fact and Conclusions of Law entered by the District Court supported by the evidence?

Appellee's statement of the issues is substantially the same.

### FACTS

This case arose after Scot Stroup (Stroup) committed suicide on September 30, 1995, while in the custody of the Campbell County Detention Center. In accord with our standard of review, we present the facts in the light most favorable to appellee, Campbell County Sheriff Byron Oedekoven.

A severe alcoholic, Stroup began to drink more heavily after his September 1994 divorce. As his mental and physical health deteriorated, Stroup became frequently involved with the law. In 1995, Stroup was incarcerated in the Campbell County Detention Center (CCDC) on five separate occasions.

On the first of these occasions, March 6 through March 30, Stroup was placed on special watch when he arrived because he was extremely intoxicated and stated he wanted to kill himself. Under special watch, an inmate is housed in an observation cell in the booking area, and a detention officer checks on the inmate every 15 minutes. During his March incarceration, Stroup was removed from special watch on March 9, and he served the rest of his time without incident. During Stroup's next three stays in the CCDC, April 28 through May 1; May 28 through May 29; and June 4 through August 4, Stroup was not the subject of a special watch.

In late August of 1995, Stroup was jailed in Sheridan for an alcohol-related incident. This led to the revocation of his probation, a probation stemming from offenses committed in Campbell County. Following a short stay in the Sheridan County jail, Stroup was transferred to the Johnson County jail in Buffalo, where his mother and sister visited him. During this visit, Stroup mentioned that he was contemplating suicide, and the mother and sister reported Stroup's suicidal thoughts to the Johnson County jailers. While still in custody of Johnson County, Stroup met with a counselor on September 5. After performing a suicide evaluation, the counselor concluded that Stroup was a low risk for suicide.

When transferred from Johnson County to the Campbell County Detention Center (CCDC) on September 10, 1995, Stroup was again placed on special watch. The CCDC's medical director ordered that Stroup be taken off special watch on September 12, noting that Stroup was eating and sleeping regularly; he was alert; his mood had changed; he

stated he would not hurt himself; and he wanted to be moved into general housing.

After moving into general housing, Stroup underwent further mental health counseling. On September 18, Stroup met individually with a psychologist. In this session, Stroup denied being suicidal, and the psychologist concluded Stroup was not an immediate suicide risk. The psychologist recommended that Stroup be monitored for depression. Stroup also participated in group counseling on September 14 and 21. During those sessions, the group counselor did not observe anything that led him to believe that Stroup was a suicide risk.

Stroup was last seen alive, in the day room, at about 9 p.m. on September 30, around medication time. When the medication officer noticed that Stroup had left the day room without receiving his scheduled medication, the officer asked an inmate to check Stroup's cell. The inmate did so and discovered Stroup hanging from the crossbar of a cell window with a bed sheet tied around his neck. The medication officer ran to the cell, cut the bed sheet to let Stroup down, and performed mouth to mouth resuscitation while emergency personnel were summoned. Upon their arrival, the emergency medical personnel continued CPR, and also attempted to revive Stroup by using a breathing tube. Their efforts began at 9:37 p.m. and ceased at 9:50 p.m. Stroup was pronounced dead at 9:55 p.m.

This wrongful death action was instituted by Stroup's mother, Patricia Stroup (appellant), acting individually and as personal representative of her son's estate, and on behalf of Stroup's sisters Diana Finch and Polly Beyer. Appellant did not demand a jury trial in the original complaint, filed December 19, 1996. Nor did she demand a jury trial in her amended complaint of February 3, 1997. Sheriff Oedekoven filed an answer to the amended complaint on February 10, 1997. This was the final pleading in the case, and neither party filed a demand for jury trial within ten days of its filing, as required by W.R.C.P. 38(b)(1).[1]

---

1. W.R.C.P. 38 provides in relevant part:
 **Rule 38. Jury trial of right.**

 (b) *Demand.—*

Initially assigned to a judge from the Sixth Judicial District, Campbell County, the case was re-assigned to a judge outside the sixth district on July 8, 1997, but that judge was immediately disqualified by appellant. The appellant then filed a motion for jury trial and demand for jury trial on July 11, 1997, nearly five months after Sheriff Oedekoven filed his answer to the amended complaint. The case was eventually re-assigned to another judge outside the sixth district, who denied appellant's motion for jury trial.

After a four-day bench trial, the district court found that neither Sheriff Oedekoven nor CCDC personnel were at fault in regard to Stroup's suicide.[2] The district court also considered Stroup's fault, but found that Stroup was 0% at fault. Appellant took nothing from her complaint. This appeal followed.

### STANDARD OF REVIEW

The district court made extensive findings of fact and conclusions of law.

> The factual findings of a judge are not entitled to the limited review afforded a jury verdict. *Hopper v. All Pet Animal Clinic, Inc.*, 861 P.2d 531, 538 (Wyo.1993). While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. *Id.* Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail weighing disputed evidence. *Id.* Findings of fact will not be set aside unless the findings are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Id.*

(1) By Whom; Filing.—Any party may demand a trial by jury of any issue triable of right by a jury by (A) serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than 10 days after service of the last pleading directed to such issue, and (B) filing the demand as required by Rule 5(d). Such demand may be endorsed upon a pleading of the party. * * *

(d) *Waiver.*—The failure of a party to serve and file a demand as required by this rule consti-

*Springer v. Blue Cross and Blue Shield of Wyoming*, 944 P.2d 1173, 1175–76 (Wyo. 1997).

After a party has waived its right to a jury trial under W.R.C.P. 38, the district court's decision to grant a jury trial is discretionary. W.R.C.P. 39(b). In reviewing for an abuse of discretion, we apply the following standard:

> Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously.

*Vaughn v. State*, 962 P.2d 149, 151 (Wyo. 1998) (quoting *Martin v. State*, 720 P.2d 894, 897 (Wyo.1986)).

### DISCUSSION

#### Jury Trial

Appellant concedes the demand for jury trial was untimely under W.R.C.P. 38(b)(1), and the right to a jury trial was thus waived pursuant to W.R.C.P. 38(d). Therefore, appellant can argue only that the district court abused its discretion in refusing to order a jury trial pursuant to W.R.C.P. 39(b), which provides in pertinent part:

**Rule 39. Trial by jury or by the court.**

(b) By the Court. Issues not demanded for trial by jury as provided in Rule 38 shall be tried by the court; but, notwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right, the court in its discretion upon motion may order a trial by a jury of any or all issues.

To support her motion for jury trial, appellant relied on two grounds. First, she

tutes a waiver by the party of trial by jury. A demand for trial by jury made as herein provided may not be withdrawn without the consent of the parties.

2. The district court also denied appellant's claims for intentional infliction of emotional distress, punitive damages, and her civil rights claim brought pursuant to 42 U.S.C. §§ 1983, 1988. Appellant does not take issue with these rulings on appeal.

claimed she desired the trier of fact to be from Campbell County and that she did not demand a jury trial in the first instance because she was content with the judge from Campbell County acting as the trier of fact. Second, she claimed that discovery had revealed conflicting evidence on at least two factual issues, issues she claimed developed following discovery.

 This court has observed that the "Federal courts have been extremely reluctant to use their discretionary power under Rule 39(b), often pointing out that discretion should be exercised only under an extraordinary showing." *Patterson v. Maher*, 450 P.2d 1005, 1008 n. 2 (Wyo.1969). It is appellant's burden to establish that the district court has abused its discretion. *In Re General Adjudication of All Rights to Use Water in the Big Horn River System*, 753 P.2d 76, 102 (Wyo.1988); *Duncan v. Laramie County Community College*, 768 P.2d 593, 596 (Wyo. 1989); *Kavanaugh v. State*, 769 P.2d 908, 913 (Wyo.1989). It is also appellant's burden to bring us a complete record on which to base a decision. *Scherer v. Scherer*, 931 P.2d 251, 254 (Wyo.1997); *Stadtfeld v. Stadtfeld*, 920 P.2d 662, 663 (Wyo.1996).

 Appellant's motion for jury trial was the subject of a September 10, 1997 hearing. The transcript from this hearing, if any, is not part of the record on appeal. The only record before us is the one-page order denying appellant's motion for jury trial. Without a transcript before us to determine what transpired at this hearing or some other record of the reason(s) the district court relied on in denying appellant's motion for jury trial, we cannot determine whether the district court abused its discretion. We, therefore, hold that appellant has not sustained her burden of establishing an abuse of discretion on the part of the district court in denying the motion for jury trial.

### Comparative Fault

 The district court considered Stroup's fault in making its determination under Wyoming's comparative fault statute, Wyo. Stat. Ann. § 1-1-109 (Lexis 1999). Appellant argues that Stroup's fault, if any, should not have been considered in making

the comparative fault determination. However, because the district court found Stroup's fault to be 0%, we consider the error, if any, harmless and decline to answer the question of whether the decedent's fault should be considered in this type of case.

We do note, however, that the few cases on point indicate that this question is not settled. A number of jurisdictions permit the decedent's fault to be considered when comparing fault. *Hickey v. Zezulka*, 439 Mich. 408, 487 N.W.2d 106, 123–24 (1992); *Champagne v. U.S.*, 513 N.W.2d 75, 76–77, 79–81 (N.D.1994); *Molton v. City of Cleveland*, 839 F.2d 240, 249 (6th Cir.1988); *Heflin v. Stewart County, Tennessee*, 1995 WL 614201 (Tenn. Ct. App. Oct.20, 1995). These courts reason generally that, although a jury is required to compare the apple of intentional suicidal conduct against the orange of negligence, "[j]urors are capable of reaching a rational and sensible balance between the decedent's fault and the negligent jailer's fault." *Hickey v. Zezulka*, 487 N.W.2d at 124. Several other courts hold that the act of suicide cannot constitute contributory fault in a custodial suicide case, reasoning that "[a] duty to prevent someone from acting in a particular way logically cannot be defeated by the very action sought to be avoided." *Myers v. County of Lake, Ind.*, 30 F.3d 847, 853 (7th Cir.1994); *see also Sauders v. County of Steuben*, 693 N.E.2d 16, 19 (Ind.1998). Put another way, "[i]f the custodian has a duty to protect the inmate from himself, the fact that the inmate tried to harm himself is a reason for liability rather than a defense." *Myers v. County of Lake, Ind.*, 30 F.3d at 852. Given 1) that the courts are divided on this issue, and 2) Wyoming's comparative fault statute does not provide a definitive answer, we are content to wait for a more appropriate time to answer this question. We hold that the error, if any, in considering the fault of the decedent was harmless because the district court attributed 0% of the fault to the decedent.

### The District Court's Findings

In addition to challenging a number of the district court's findings of basic fact, appellant also challenges the district court's ulti-

mate finding that the sheriff and CCDC personnel were not negligent in caring for Stroup. After a careful review, we conclude that the district court's findings are supported by the record.

In a negligence case, the plaintiff has the burden of proving four elements: (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the defendant's breach of his duty was the proximate cause of the plaintiff's injuries; and (4) the plaintiff was injured. *Anderson v. Duncan*, 968 P.2d 440, 442 (Wyo.1998); *John Q. Hammons v. Poletis*, 954 P.2d 1353, 1356 (Wyo.1998); *Daily v. Bone*, 906 P.2d 1039, 1043 (Wyo.1995). At trial, the focus was on element two, whether the sheriff or the detention center personnel breached their duty to Stroup.

In our consideration of this case, however, we discovered a question still remains concerning the existence of a duty.[3] In fact, in *R.D. v. W.H.*, 875 P.2d 26, 29 n. 1 (Wyo.1994), we specifically reserved the question of whether a duty exists in this sort of case:

> Courts in different situations have recognized other "exceptions" to the general rule that a decedent's suicide precludes a finding of liability against a tort-feasor. For example, some institutions, such as jails or hospitals, have been found to have a special duty of care to prevent those in

their custody from committing suicide. *See, e.g., McLaughlin v. Sullivan*, 123 N.H. 335, 461 A.2d 123, 125 (1983); and *Krieg [v. Massey*, 239 Mont. 469, 781 P.2d 277, 279 (1989) ]. In this decision, we do not consider what other exception may apply in Wyoming to the general rule.

The district court determined that the sheriff owed Stroup a duty, and this ruling is not a subject of this on appeal.[4] Judicial restraint usually demands that we address only those issues properly before us and preserved for our review. *Stephens v. State*, 774 P.2d 60, 63 (Wyo.1989). Moreover, we generally refrain from inquiring into a question not raised by the parties. *Belle Fourche Pipeline Co. v. Elmore Livestock Co.*, 669 P.2d 505, 514–15 (Wyo.1983); *Pritchard v. State, Division of Vocational Rehabilitation, Dep't of Health and Social Servs.*, 540 P.2d 523, 524 (Wyo.1975). The question of whether a duty exists and, if so, the scope of that duty, is too important a question to be decided without briefing on the issue. Therefore, we will assume, without deciding, that a duty exists.[5]

We first address appellant's challenge to the district court's finding that Stroup was seen alive in the day room at about 9 p.m. on the night of his death. Relying on testimony from CCDC inmates that

---

3. The question of whether appellee is entitled to (1) immunity under the Wyoming Governmental Claims Act or (2) qualified immunity is not before this court. *See Darrar v. Bourke*, 910 P.2d 572, 576–77 (Wyo.1996) ("qualified immunity is available to peace officers in spite of the waiver of immunity in the Wyoming Governmental Claims Act"); Wyo. Stat. Ann. §§ 1–39–112, 1–39–103(a)(iii), 7–2–101(iv)(A) and (H) (Lexis 1999); *cf. Vigil v. Ruettgers*, 887 P.2d 521, 524–25 (Wyo.1994). Even if a peace officer is unable to claim immunity from suit, we would still need to determine if there is an enforceable duty requisite to a finding of tortious conduct under Wyo. Stat. Ann. § 1–39–112 (Lexis 1999). *See Daily v. Bone*, 906 P.2d 1039, 1043 (Wyo.1995) (existence of duty is a question of law).

4. The index to the record on appeal indicates that the sheriff moved for summary judgment. However, none of the summary judgment materials are part of the record on appeal.

5. This duty has been described in this fashion:
> Prison officials have a duty to exercise ordinary and reasonable care for the protection of

the persons in their custody. The scope of this duty does not generally extend to protecting prisoners from self-inflicted injury or death. However, it can be expanded to include self-inflicted injury or death when the prison officials know or should know that the prisoner might harm himself or herself.
> An apparent majority of other jurisdictions have reached the same conclusion. Thus, in both prison and psychiatric hospital settings, the courts consistently hold that custodians have a duty to protect prisoners or patients from reasonably foreseeable self-destructive acts.

*Cockrum v. State*, 843 S.W.2d 433, 436 (Tenn. App.1992) (citations omitted); *see also* Jane M. Draper, *Annotation, Civil Liability of Prison or Jail Authorities for Self-inflicted Injury or Death of Prisoner*, 79 A.L.R. 3rd 1210, 1214 (1977); *Pretty on Top v. City of Hardin*, 182 Mont. 311, 597 P.2d 58, 60–62 (1979) ("special circumstances" required to invoke duty); *Sauders v. County of Steuben*, 693 N.E.2d 16, 18 (Ind.1998).

they did not see Stroup after the 5:30 p.m. lockdown and the fact that Stroup's body was cold when found, appellant argues that the district court's finding "defies logic." Essentially, appellant asks us to disregard the testimony from three detention officers who reported seeing Stroup in the day room around 9:00 p.m. while medication was being passed. In addition, she asks us to disregard the EMT's testimony that a body will become cold quickly due to shock, which can cause rapid cooling of the skin due to decreased blood circulation. It is not our task to re-weigh disputed evidence or to re-assess the credibility of witnesses. *Springer v. Blue Cross and Blue Shield of Wyoming*, 944 P.2d at 1176. We find abundant record support for the district court's finding and conclude it is not clearly erroneous.

Contrary to appellant's arguments, the record also supports the district court's findings that Stroup was monitored for depression and suicidal ideation, and that the CCDC followed its policies in doing so. Stroup had a pattern of expressing his suicidal thoughts when he was first incarcerated. The record reveals that CCDC personnel analyzed Stroup upon his September 10, 1995 arrival and placed him on special watch. He was removed from special watch, upon his own request, after he appeared to stabilize. To help with his depression, Stroup continued taking Prozac. Stroup reported that the Prozac was helping. In addition, Stroup attended individual and group counseling, but neither of his counselors nor any of the medical personnel considered Stroup a suicide risk. This evidence supports the district court's findings that the CCDC followed its polices for obtaining information about inmates and developing medical plans, and we conclude that the district court's findings in this regard are not clearly erroneous.

Appellant also points out that the CCDC did not follow its policy of using an inmate bulletin board to alert detention officers to the special needs of inmates. However, while the district court found that the CCDC had not followed its policy, it also found that no evidence established that the actions of CCDC personnel would have been any different if the inmate bulletin board policy had been followed. As discussed above, the CCDC followed its policies by monitoring Stroup and his medical needs, and the discharge of these duties supports the finding that the actions of the CCDC would not have altered had the bulletin board been in use.

Appellant next complains that the CCDC was negligent because its personnel were not aware of the information contained in the petition that revoked Stroup's probation. This petition included two letters stating that Stroup was trying to drink himself to death. However, the district court found that even if CCDC personnel had been privy to these letters, their course of action would not have changed. In addition to the previously recited evidence detailing Stroup's care, this finding is buttressed by testimony from the psychologist that the information contained in the petition was too old to warrant suicide watch. The district court's finding is supported by the record and not clearly erroneous.

Appellant also complains about two findings regarding supervision of Stroup on the night of his death. First, contrary to the district court's findings, she complains that the jail did not perform appropriate "walk throughs" whereby detention officers account for inmates. She also complains that the jail violated its policy by permitting Stroup to have his cell locked for an extended period of time.

Generally, CCDC detention officers perform a walk through approximately every 30 minutes. For the night of September 30, a detention officer testified that she performed a visual accounting of all the prisoners in Stroup's cell block at 8:30 and 9 p.m. Again, the district court's findings are supported by the record and are not clearly erroneous.

■ On the second point, inmates in the CCDC were not permitted to close and lock their cell doors for extended periods. When inmates did lock their cell doors, a light was triggered in an observation tower. If the detention officer in the observation tower noticed a cell was locked, the lock could be "popped" open with the flick of a switch. At the time Stroup was discovered hanging, his cell door was closed and locked. However, there is no evidence regarding when Stroup

locked his cell door. A fellow inmate visited him around 8 p.m., and Stroup's cell door was closed, but not all the way, and not locked. Since the record does not tell when Stroup locked his cell door, it is impossible to examine whether the interval of time that passed would be sufficient to establish a breach of duty. A finding of negligence cannot be left to speculation. *John Q. Hammons v. Poletis*, 954 P.2d at 1356.

 Finally, appellant asks us to upset the district court's ultimate determination that the sheriff and his staff were not negligent in their care of Stroup. However, because appellant's argument for the most part assumes the success of her challenges to the district court's other findings, a detailed analysis of this claim is unnecessary. We do note that

> [p]redicting suicide is impossible. At best psychologists can group inmates according to risk. False positives are common; that is to say, most persons in these high-risk categories do not attempt to harm themselves. *See* David Lester & Bruce L. Danto, *Suicide Behind Bars: Prediction and Prevention*, 23–36, 75–101 (1983); Madelyn S. Gould *et al.*, "The Clinical Prediction of Adolescent Suicide," in *Assessment and Prediction of Suicide* 130–43 (Ronald W. Maris et al., eds., 1992); Ronald L. Bonner, "Isolation, Seclusion, and Psychosocial Vulnerability as Risk Factors for Suicide Behind Bars," *id.* 112.... A duty to take maximum precautions would make life miserable for the many persons who are in categories of risk and could be consigned to months if not years without clothing (or even to spend time in restraints) despite an objectively low probability of harm.

*Myers v. County of Lake, Ind.*, 30 F.3d at 850. Moreover, because clever inmates can commit suicide no matter what a jailer does to curtail their opportunities, failure to prevent a suicide does not necessarily show the lack of reasonable care. *Id.* After a careful review of the record, we find ample support for the findings of the district court, and we conclude the findings are not clearly erroneous.

We do not address appellant's other challenges to the district court's findings. By upholding the district court's determination that the appellee was not negligent, the other factual challenges (that mother and sister placed blocks on their phones to prevent Stroup from calling, and that the survivors did not suffer any damages) have become moot.

## CONCLUSION

This unfortunate case was fully presented to the district court over the course of a four-day trial. Finding no error warranting reversal, we affirm.