JUSTICE WEBER
delivered the Opinion of the Court.
Plaintiff, Leo F. Marazzato, Sr. (Mr. Marazzato), is the father and personal representative of Leo F. Marazzato, Jr. (the decedent). Mr. Marazzato brought this Federal Employers’ Liability Act (FELA) action in the District Court for the Fourth Judicial District, Missoula County, seeking emotional distress damages suffered by the decedent prior to the decedent’s death by suicide, and for the pecuniary loss the parents suffered after the decedent’s death. The District Court granted Burlington Northern’s Motion for Summary Judgment *489 concluding that Mr. Marazzato had not established that it was foreseeable by Burlington Northern that its actions would result in the decedent’s suicide. Mr. Marazzato appeals. We affirm.
The revised dispositive issue is: Did the District Court correctly conclude that the plaintiff failed to present sufficient proof to establish that Burlington Northern knew or should have known that assignment to an unsupervised rubber room could have resulted in foreseeable harm to the decedent?
The decedent worked as a clerk for Burlington Northern from 1976 until his suicide in March, 1988. Under a collective bargaining agreement, he was a “merger protected” employee which means that Burlington Northern was obligated to pay his wages even if it had no work for him to do. Upon sale of Burlington Northern’s southern line to Montana Rail Link, Burlington Northern had more clerks in Missoula than needed. Beginning March 14, 1988, the decedent was assigned to an Alternative Work Location (known as a “rubber room” by employees) in Missoula. Employees who were assigned to the rubber room were required to report to the room for work shifts but had no work to do. The employees were free to read, watch television, play cards, and otherwise entertain themselves. There were no supervisors available or in attendance in the rubber room.
On March 22, 1988, the decedent was notified that he was being transferred to Havre, Montana. He had the option of accepting the transfer by reporting to work in Havre within 20 days, taking a six month leave of absence without pay, or resigning and accepting a separation allowance.
Evidence in the form of affidavits, depositions, and medical records show that the decedent’s mental health deteriorated rapidly during the month of March. The decedent threatened to commit suicide several times during the month. On March 27, 1988, his Mother called the police and the decedent agreed to enter the hospital under the care of a psychiatrist. He was released the following day. That same day he received another letter indicating that it had come to the attention of Burlington Northern that his “home zone” was in Helena, Montana and that he was being reassigned to the rubber room in Helena. On March 29,1988, the decedent bought a gun at a secondhand shop, drove up to the South Hills area of Missoula and killed himself.
Mr. Marazzato argues that the decedent’s assignment to the unsupervised rubber room caused his mental and emotional condition which was the direct and proximate result of Burlington Northern’s *490 negligence in failing to provide the decedent with a safe place to work in violation of FELA [45 U.S.C. § 51, et seq.]. The District Court granted summary judgment to Burlington Northern on the basis of foreseeability. Mr. Marazzato contends that the District Court erred because affidavits from expert witnesses sufficiently established foreseeability of harm to reach the jury in a FELA case.
Dr. James C. Deming, licensed psychologist from Bozeman, Montana, and Dr. Marie-Claude Rigaud, licensed psychiatrist from Aurora, Illinois, presented affidavits after analyzing the medical records and depositions available in this case. Both experts concluded that the decedent was suffering from major depression and dependent personality disorder prior to his death. Dr. Deming also concluded that decedent’s behavior was consistent with “isolation stress” similar to the reactions found among military personnel stationed at isolated military stations.
Dr. Rigaud observed that the decedent had been under the effect of a multitude of moderate to severe job stressors for some time before his assignment to the rubber room. Those earlier stressors included two imposed job transfers which involved change, deprivation of the support of significant others, perception of inadequate preparation and training to do the job safely and effectively, and poor fit between the individual and his environment. His responses to those stressors were expressed fears, depression, and feelings of loneliness and emptiness, as well as insecurity and job dissatisfaction. The organization changes within the company added new stressors such as uncertainty about his employment future. Confinement in the rubber room without identified objectives or well-defined expectations as to what was to be achieved resulted in boredom and lack of meaningful purpose which created additional stressors. Based on these observations, Dr. Rigaud came to the following conclusions:
“(1) The conditions of [decedent’s] employment at [Burlington Northern] constituted major traumata which led to a progressive emotional deterioration, and eventually to his latest episode of agitated suicidal depression.
“(2) Additionally, acute stressors which came to bear after his discharge from the hospital further exacerbated an already precarious condition and led to more psychological distress, acute despair, confusion, impaired reality testing and judgment.
“(3) [Decedent] killed himself as a result of an irresistible impulse brought about by his emotional condition described above.
“(4) [Burlington Northern] should have been able to foresee the *491 potentially detrimental impact that such stressful working conditions would have had on their employees. At the least, the company should have assigned a supervisory personnel who could have observed and monitored such effects as they were becoming evident.”
Mr. Marazzato asserts these expert conclusions were sufficient to establish foreseeability in a FELA case.
Under FELA, the test of whether a case should go to a jury is simply whether the evidence justifies with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. Rogers v. Missouri Pac. R.R. (1957), 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493, Mr. Marazzato cites Rogers for the proposition that FELA is liberally construed to require only a slight amount of foreseeability to get a FELA case to a jury. The Rogers Court went on to say “[i]t does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee’s contributory negligence.” Rogers, 352 U.S. at 506, 77 S.Ct. at 440. It is obvious from this statement that the Rogers case was addressing the issues of multiple causes and contributory negligence after it had been established that the employer was negligent. Also see Gallick v. Baltimore & Ohio R.R. (1963), 372 U.S. 108, 116, 83 S.Ct. 659, 664-665, 9 L.Ed.2d 618; Barilla v. Atchison, Topeka & Santa Fe Ry. (D. Ariz. 1986), 635 F.Supp. 1057, 1059.
The plaintiff has the burden of proving that defendant’s negligence was the proximate cause in whole or in part of plaintiff’s [death]. Barilla, 635 F.Supp. at 1059. Reasonable foreseeability of harm is an essential ingredient of FELA negligence. Gallick, 372 U.S. at 117, 83 S.Ct. at 665.
Mr. Marazzato has failed to provide any proof that Burlington Northern knew or should have known that assignment of the decedent to an unsupervised rubber room created a reasonable possibility of harm. Affidavits of medical experts that establish a medical theory do not demonstrate knowledge on the part of Burlington Northern. We agree with the conclusion of the District Court that FELA
“... requires some proof before being submitted to the jury; here there is no suggestion of any kind in any of the evidence submitted to the Court that would give rise to a finding of foreseeability with respect to a suicide arising from the use of the [rubber room], by any of the employees, or by this specific employee.”
We hold that the District Court did not err in concluding that *492 Mr. Marazzato failed to establish reasonable foreseeability of harm absent sufficient facts to constitute notice to Burlington Northern.
Mr. Marazzato argues that he was prevented from establishing Burlington Northern’s knowledge of the effects of rubber rooms on the employees because the District Court granted Burlington Northern’s Motion for a Protective Order during discovery. There is no basis for Mr. Marazzato’s contention. While it is true that the District Court did grant Burlington Northern protection as to several interrogatories, the District Court denied the motion as to Interrogatory No. 30 which stated:
“Please identify each and every paper, study, report and memoranda outlining the actual, possible or anticipated mental or emotional impact or the use of ‘rubber rooms’ on employees such as plaintiff’s decedent which Burlington Northern has in its possession or has access to.”
Through Interrogatory No. 30, Mr. Marazzato had access to all documents in Burlington Northern’s possession that could have established Burlington Northern’s knowledge. Mr. Marazzato failed to prove that Burlington Northern should have foreseen harm to the decedent.
We hold that the District Court correctly concluded that the plaintiff failed to present sufficient proof to establish that Burlington Northern knew or should have known that assignment to an unsupervised rubber room could have resulted in foreseeable harm to the decedent.
Affirmed.
CHIEF JUSTICE TURNAGE and JUSTICES HARRISON, GRAY, HUNT and McDONOUGH concur.