No. 99-343

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 117

295 Mont. 416

986 P.2d 1081

MARY POOLE, Guardian and Conservator

for minor child, DAVID MEYER, JR.,

Plaintiff and Appellant,

v.

DONALD POOLE,

Defendant and Respondent.

APPEAL FROM: District Court of the First Judicial District,

In and for the County of Lewis and Clark,

The Honorable Thomas C. Honzel, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

John C. Doubek, Small, Hatch, Doubek & Pyfer, Helena, Montana

For Respondent:

Shelton C. Williams and William R. Bieler, Williams & Ranney,

Missoula, Montana

Submitted on Briefs: December 9, 1999
Decided: May 4, 2000

Filed:

_____

Clerk

Justice Jim Regnier delivered the opinion of the Court.

¶1 Mary Poole, guardian and conservator for minor child David Meyer, Jr. (Mary), appeals from the judgment entered by the First Judicial District Court, Lewis and Clark County, granting summary judgment in favor of Donald Poole (Don), dismissing Mary's claims against Don with prejudice, and awarding Don his costs. The sole issue Mary raises on appeal is whether the District Court erred in determining that there were no genuine issues of material fact and that Don was entitled to judgment as a matter of law. We affirm.

BACKGROUND

¶2 The following facts are before the Court via deposition testimony and are viewed in the light most favorable to Mary:

¶3 Mary and her son from a previous relationship, David Meyer, Jr., who had been born January 30, 1985, began living with Don when David was 18 months old. In 1987 or 1988, Mary and Don married. While Don never adopted David, David uses the name "David Poole" and refers to Don as "Dad." During the marriage, the couple's daughter Jami was born.

¶4 In 1992, Mary and Don divorced. After the divorce, David and Jami primarily lived with Mary except for a period of approximately three weeks in August 1995 when they resided with Don because Mary had moved to Billings and then back to Helena. In

addition, David and Jami spent several weekends at Don's house. Prior to David's accident, the kids also spent a few hours after school each day at Don's house until Mary could pick them up after work. Don worked the day shift at ASARCO from 6:30 a.m. to 2:30 p.m. and was home when school let out.

¶5 On May 15, 1996, David rode the bus to Don's house after school. Shortly after arriving at Don's, David asked Don if he could go over to his friend John Baker's house, which was approximately a block and a half away. David and John had been friends for many years and Don and Mary knew John's parents. On that date, Don gave David permission to go to John's house. While watching television at John's house, a classmate of theirs, Tom Oyen, called and asked if they wanted to come over to his house. John and David left John's house and went over to Tom's house. David did not call Don to let him know that he was going to be at Tom's house.

¶6 After arriving at Tom's house, the boys went out in the backyard and were throwing a football around when another classmate of theirs, Kristy Holman, arrived with some gasoline. Tom asked John and David if they wanted to burn a picture of one of their classmates and John and David shrugged their shoulders and went along with it.

¶7 Tom poured some of the gas into a small, plastic Hershey cocoa container and placed the picture on a wire. John attempted to light it, but was unsuccessful. Tom got the picture from John and lit it and then dropped a match into the plastic container with the gasoline. The gas ignited and Tom got scared and kicked the container. The burning gasoline splashed onto David's chest and face, starting his clothing on fire. At that point, David stopped, dropped, and rolled, putting out the flames.

¶8 Unfortunately, David suffered severe burns requiring extensive treatment at a facility in Salt Lake City, Utah. David continues to require medical treatment and physical therapy for his injuries. In addition, David's future medical care may include plastic surgery.

¶9 On September 11, 1998, Mary brought an action against Don alleging that the losses she and David suffered were proximately caused by Don's gross negligence and recklessness and his failure to act as a reasonably prudent person would when supervising an 11-year-old child. Don filed an answer to the complaint denying all the allegations and asserting several affirmative defenses.

¶10 After the depositions of Mary, Don, and David had been completed, Don filed a

motion for summary judgment. Don alleged, *inter alia*, that he had no duty to guard against the harm suffered by David because such harm was unforeseeable. Mary opposed Don's motion, alleging that there were material facts in dispute rendering summary judgment improper.

¶11 Oral argument concerning Don's motion for summary judgment was held on January 28, 1999. A transcript of the summary judgment hearing has not been provided to this Court. On May 14, 1999, the District Court issued a Memorandum and Order granting Don's motion for summary judgment. In reaching its decision, the District Court concluded that the record did not establish the existence of a duty on the part of Don since the injury to David was unforeseeable, entitling Don to summary judgment.

¶12 After its ruling, the District Court entered judgment acknowledging its award of summary judgment to Don, dismissing Mary's claims against Don with prejudice, and awarding Don his costs. Mary appeals from the judgment entered by the District Court.

## STANDARD OF REVIEW

¶13 Our standard of review in appeals from summary judgment rulings is de novo. *See Ruckdaschel v. State Farm Mut. Auto. Ins.* (1997), 285 Mont. 395, 398, 948 P.2d 700, 702 (citations omitted). When we review a district court's grant of summary judgment, we apply the same evaluation, based on Rule 56, M.R.Civ.P., as the district court. *See Bruner v. Yellowstone County* (1995), 272 Mont. 261, 264, 900 P.2d 901, 903. In *Bruner*, we set forth our inquiry:

> The movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist. Having determined that genuine issues of fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. We review the legal determinations made by a district court as to whether the court erred.

*Bruner, 272 Mont. at 264-65, 900 P.2d at 903 (citations omitted).*

¶14 With regard to summary judgment in negligence actions, we have previously stated:

> Ordinarily, negligence actions involve questions of fact and are not susceptible to

summary judgment. However, when reasonable minds cannot differ, questions of fact can be determined as a matter of law. For example, if the moving party establishes that one element of a cause of action lacks any genuine issue of material fact and the non-moving party does not come forward with proof that a genuine issue does exist, summary judgment is proper.

*Wiley v. City of Glendive (1995), 272 Mont. 213, 216, 900 P.2d 310, 312 (citations omitted).*

## DISCUSSION

¶15 Whether the District Court erred in determining that there were no genuine issues of material fact and that Don was entitled to judgment as a matter of law?

¶16 Mary argues that negligence cases typically involve questions of fact and are not susceptible to summary judgment. Mary claims that there is a genuine issue of material fact as to whether Don knew what Mary asked of him as far as supervising the children and whether Don had acted as a reasonably prudent person would have while supervising children. In addition, Mary points out that the District Court, in its Memorandum and Order, stated that it was clear Don owed a duty to David. Mary contends that whether Don breached that duty is a genuine issue of material fact that should have been submitted to a jury.

¶17 In response, Don contends that Mary cannot create genuine issues of material fact with conclusory and speculative assertions. Don further contends that the issues of fact raised by Mary are neither disputed nor material. Don argues that his duty to David only extended to foreseeable harm and a reasonably prudent person would not have foreseen that allowing David to go to John Baker's house would present a risk of danger.

¶18 The District Court agreed with Don, concluding that Don's duty to David only extended to harm that was foreseeable and that the injury sustained by David was not foreseeable. The court noted that Mary's conclusory statements were not enough to defeat Don's motion for summary judgment and that since the record did not establish the existence of a duty on the part of Don, Don was entitled to summary judgment.

¶19 In order to sustain a claim for negligence, a plaintiff must establish a legal duty on the part of the defendant, a breach of that duty, causation, and damages. Thus, we must first address whether Don owed a legal duty to David. *See Lopez v. Great Falls Pre-Release*

*Serv., Inc.*, 1999 MT 199, ¶ 18, 295 Mont. 416, ¶ 18, 986 P.2d 1081, ¶ 18. "The question of whether a legal duty is owed by one person to another, as well as the scope of any such duty, are questions of law." *Webb v. T.D.* (1997), 287 Mont. 68, 72, 951 P.2d 1008, 1011 (citation omitted).

¶20 Under Montana law, the duty element of negligence turns primarily on foreseeability:

> Foreseeability is of prime importance in establishing the element of duty, and the question of defendants' negligence, if any, must of necessity hinge on the finding of a breach of that duty. If a reasonably prudent defendant can foresee neither any danger of direct injury nor any risk from an intervening cause he is simply not negligent.

*Busta v. Columbus Hosp. Corp.* (1996), 276 Mont. 342, 362, 916 P.2d 122, 134 (citation omitted). *As it relates to the existence of a legal duty, foreseeability is "measured on a scale of reasonableness dependent upon the foreseeability of the risk involved with the conduct alleged to be negligent." Lopez, ¶ 27. Thus, it is axiomatic that in the absence of foreseeability, there is no duty and in the absence of duty, there is no negligence. See Lopez, ¶ 26.*

¶21 Consequently, the issue in this case becomes whether Don could have foreseen that by giving David permission to go to John Baker's house that David would go to the home of another child, participate along with other children in burning a photograph using gasoline, and be burned when another child accidentally kicked the container of flaming gasoline onto David.

¶22 Mary has alleged that Don was negligent in allowing David to go to the home of a friend when no adult was present. Mary also contends that the District Court made several mistakes concerning evidence in the record. However, we agree with Don that the alleged evidentiary mistakes and factual issues raised by Mary are either not material or not in dispute with regard to the issue of whether Don owed a duty to David

¶23 As the District Court pointed out, the undisputed facts in this case demonstrate that on May 15, 1996, Don had given David permission to go to John Baker's house; that Don, Mary, and David had known John and his family for a number of years; and that David had been to John's home on a number of occasions without incident. In addition, Mary testified that prior to May 15, 1996, David had never played with matches, fire, or gasoline; David was the kind of child that you did not have to worry about getting into risky situations; David generally followed instructions; David was generally well-behaved

and reliable; and David did not require more than average discipline.

¶24 Mary also testified that she would usually tell David that he could not go to a friend's house without an adult present. In his deposition, David testified that his mom wanted an adult to be home when he went to a friend's house. However, David also testified that his mother had allowed him to play at John Baker or Ryan Waeckerlin's houses without an adult present because David had known them for a long time and they were really good friends. In addition, Mary testified that she never instructed Don not to allow David to go to a home unless the parents were present.

¶25 Based on these undisputed facts, we conclude that the injuries suffered by David were not foreseeable by Don giving David permission to go to John Baker's house without an adult present. As the District Court had pointed out, David had been to John's house on numerous occasions, including times when no adult was present, without incident. Mary, herself, had allowed David to go to John's house when no adult was present. Thus, we conclude that Don did not have a duty to protect David from harm that was not foreseeable. In the absence of duty, there is no negligence.

¶26 Accordingly, we conclude that the District Court correctly found that reasonable minds could not differ regarding the absence of any genuine issue of material fact in relation to the existence of a legal duty on the part of Don and properly concluded that Don was entitled to summary judgment as a matter of law. Since we hold that Don owed no duty to David, we need not discuss the elements of breach of duty, causation and damages.

¶27 Affirmed.

/S/ JIM REGNIER

We Concur:

/S/ JAMES C. NELSON

/S/ WILLIAM E. HUNT, SR.

/S/ TERRY N. TRIEWEILER

/S/ W. WILLIAM LEAPHART