DA 24-0356

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 113

MARK MULLEE,

     Plaintiff and Appellant,

  v.

WINTER SPORTS, INC., d/b/a WHITEFISH
MOUNTAIN RESORT,

     Defendant and Appellee.

APPEAL FROM:   District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DV-22-0051
Honorable Amy Eddy, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

        Ian P. Gillespie (argued), Driggs, Bills & Day, P.C., Missoula,
Montana

     For Appellee:

        Mikel L. Moore (argued), Moore Resolutions, PLLC, Kalispell,
Montana

        Christopher C. Di Lorenzo, Moore, Cockrell, Goicoechea & Johnson,
PC, Kalispell, Montana

Argued: March 6, 2025
Submitted: March 11, 2025
Decided: June 3, 2025

Filed:

_____
Clerk

FILED

06/03/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0356

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1	Plaintiff and Appellant Mark Mullee appeals from a series of orders issued by the Eleventh Judicial District Court, Flathead County. Those orders include the Order re: Defendant's Motion for Summary Judgment; the Order re: Mullee's Motion for Summary Judgment on Damages; the Order re: Defendant's Motion to Exclude Dr. Donaldson, Reg Gibbs and Ann Adair; and the Order re: Plaintiff's Various Motions in Limine, each issued on April 12, 2024, and the accompanying Final Judgment issued May 28, 2024.

¶2	Mullee raises several issues on appeal regarding the District Court's orders related to the admission and/or exclusion of expert testimony and damage calculations, however we need only address the following dispositive issue:

> *Did the District Court err by granting WSI summary judgment on Mullee's negligence claim because it did not owe a duty of reasonable care to install and maintain fencing which would catch him and prevent him from falling down an embankment and into a streambed after he lost control and went over the edge of a beginner-level ski trail?*

¶3	We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4	Defendant and Appellee Winter Sports, Inc. (WSI), has operated a large ski resort known as Whitefish Mountain Resort (WMR) on Big Mountain since 1947. WMR's ski area is approximately 3,000 acres in size, containing terrain and obstacles of nearly every type—groomed trails, moguls, lift towers, fences, cliffs, trees, streams, rocks, etc. Since opening in 1947, millions of skiers have skied WMR, including 6.9 million skier visits between the 2002-03 and 2022-23 ski seasons.

2

¶5     Mullee is a self-proclaimed expert-level skier who has skied at WMR since the 1970s. Between the 2009-10 ski season and January 16, 2019, Mullee skied 186 days at WMR. Most years, Mullee parked in either the Pine or Spruce lots located off a green level run, Home Again, by Chair 6 near the Base Lodge. On January 16, 2019, Mullee parked in the Pine Lot and took Chair 6, intending to then take Chair 1 to the summit. Mullee had made plans to meet up with a friend at the Summit House at the top of Chair 1, but when he exited Chair 6 and began skiing over to Chair 1, he realized he had forgotten his phone and water bottle in his truck. Instead of taking Chair 1, Mullee began skiing down Chipmunk, a green run located below Chair 6, back towards his truck. Off of Chipmunk, there is a trail which goes through a tunnel and connects to Home Again. The skier's tunnel was installed no later than 2002 and is used by WMR skiers thousands of times per day, including often by the DREAM Adaptive Recreation ski program serving disabled individuals. The trail curves to the right immediately after exiting the tunnel. WMR had a practice of maintaining a snow fence (also known as C-netting) on the left side of the trail after the tunnel as a visual aid to remind skiers to follow the trail to the right. To the left of the fence is a steep embankment which leads down to a streambed. As of January 16, 2019, Mullee had skied this trail over 100 times during the previous ten years, and at least six times in the previous ten days. Despite the thousands upon thousands of skiers navigating the trail exiting the tunnel since its inception, Mullee's accident was the first of its kind at this location. After going through the skier's tunnel, Mullee exited onto the trail, lost control, and fell down the embankment where he landed on a large rock, seriously injuring his hip and requiring him to be taken by ambulance to North Valley Hospital in

3

Whitefish. Mullee was eventually taken to Harborview Medical Center in Seattle for medical treatment. Mullee and WMR dispute whether the fence was up and Mullee crashed through it or if the fence had been knocked over by a groomer prior to when Mullee lost control on the trail.

¶6 On January 12, 2022, Mullee filed his Complaint in the District Court, asserting claims of negligence, negligence per se, breach of contract, and premises liability against WSI stemming from his January 16, 2019 skiing accident.[1] On January 22, 2024, WSI filed a motion for summary judgment, asserting Mullee's claims were barred by the Montana Skier Responsibility Act (MSRA) and WSI had no duty to maintain a fence which would catch Mullee after he lost control. Mullee filed a brief in opposition to WSI's summary judgment motion on February 12, 2024. WSI filed a reply brief on February 28, 2024.

¶7 The District Court held oral argument on WSI's motion for summary judgment, as well as numerous other motions filed by the parties, on April 11, 2024. The District Court took the matter under advisement at the close of the hearing and issued its order granting WSI's motion for summary judgment later that same day. The court determined Mullee's accident was an inherent risk and danger of skiing and WSI had no duty to install or maintain fencing to catch Mullee and prevent him from going down the embankment after

---

[1] Mullee withdrew his negligence per se and breach of contract claims on February 14, 2024.

4

he left the trail. The court granted summary judgment in favor of WSI on both Mullee's negligence claim and his premises liability claim.[2]

¶8 Mullee appeals. Additional facts will be discussed as necessary below.

## STANDARD OF REVIEW

¶9 We review a district court's grant or denial of summary judgment de novo, applying the same criteria as M. R. Civ. P. 56. *CB1 v. Hove*, 2025 MT 36, ¶ 9, 420 Mont. 380, 564 P.3d 434. Summary judgment is only appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *CB1*, ¶ 9.

## DISCUSSION

¶10 *Did the District Court err by granting WSI summary judgment on Mullee's negligence claim because it did not owe a duty of reasonable care to install and maintain fencing which would catch him and prevent him from falling down an embankment and into a streambed after he lost control and went over the edge of a beginner-level ski trail?*

¶11 Mullee asserts the District Court erred by granting summary judgment in favor of WSI because (1) WSI had a legal duty to maintain a fence which would catch him and prevent his fall down the embankment at the spot he lost control and skied off of the trail and (2) genuine disputes of material fact related to the fence itself—whether it was up at time of Mullee's accident and, if so, whether the fence used by WSI was appropriate—render summary judgment inappropriate as they are questions to be decided by a jury. WSI contends the District Court correctly granted summary judgment in its favor because it had no legal duty to maintain a fence in that spot and any disputes related to the fence itself or

---

[2] Mullee offers no argument regarding the premises liability claim on appeal and we need not address it further.

how Mullee was skiing when he lost control are irrelevant to a negligence analysis when no legal duty exists. The District Court granted summary judgment in favor of WSI on Mullee's negligence claim, determining WSI had no legal duty to maintain a fence capable of catching Mullee and preventing him from falling down the embankment in the spot where he was injured. We agree with the District Court.

¶12    In this case, Mullee has brought a claim for negligence against WSI asserting it had a legal duty to maintain a fence capable of catching him and preventing him from falling down an off-trail embankment and into a streambed at the spot where he lost control on a beginner-level ski trail. "Negligence is the failure to use the degree of care that an ordinarily prudent person would have used under the same circumstances." *Peterson v. Eichhorn*, 2008 MT 250, ¶ 23, 344 Mont. 540, 189 P.3d 615 (citing *Barr v. Great Falls Int'l Airport Auth.*, 2005 MT 36, ¶ 41, 326 Mont. 93, 107 P.3d 471). To maintain an action in negligence, a plaintiff must prove four essential elements: (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached that duty, (3) the breach was the actual and proximate cause of an injury to the plaintiff, and (4) damages resulted. *Bonilla v. Univ. of Mont.*, 2005 MT 183, ¶ 14, 328 Mont. 41, 116 P.3d 823 (citing *Massee v. Thompson*, 2004 MT 121, ¶ 30, 321 Mont. 210, 90 P.3d 394).

¶13    At the outset, we recognize there are numerous factual disputes which would ordinarily render summary judgment inappropriate, including how fast Mullee was skiing when he crashed (Mullee asserts he was traveling at a low rate of speed, while WMR's ski patrollers claim he told them he was going "too fast" when they responded to the crash) and whether or not the C-netting fence was up when Mullee's accident occurred (Mullee

6

asserts the fence was knocked over before he arrived, while WMR's ski patrollers contend it was up when it was checked in the morning pursuant to ski patrol protocol and Grace Byrd, a DREAM Adaptive instructor who discovered Mullee after the accident, claims it was still partially standing after the crash). But these factual disputes could only be material for purposes of defeating a summary judgment motion if WSI owed Mullee a legal duty to maintain a fence which would catch him at the spot of his accident. Mullee's claim is not a contention WSI had a duty to warn him of the danger located off of the ski trail and down the embankment—indeed, it could not be one as Mullee has skied past the fence in question possibly hundreds of times, "always" remembered the fence being there and believed it was there to represent a dangerous area below, knew there was a stream below because he could hear the water flowing, and knew not to ski over the fence—but that WSI had a duty to catch him after he lost control.

¶14　The existence of a legal duty presents a question of law to be determined by the court. *Howard v. Replogle*, 2019 MT 244, ¶ 15, 397 Mont. 379, 450 P.3d 866 (citing *Dick Irvin, Inc. v. State*, 2013 MT 272, ¶ 17, 372 Mont. 58, 310 P.3d 524). "[A]ctionable negligence arises only from the breach of a legal duty. Therefore, in order for there to be a genuine issue of material fact in a negligence case, there must be a duty imposed on the defendant and allegations which, if proven, would support a finding of a breach of the duty." *Peterson*, ¶ 24 (citing *Richardson v. Corvallis Pub. Sch. Dist. No. 1*, 286 Mont. 309, 313, 950 P.2d 748, 751 (1997)). While negligence actions ordinarily involve factual issues which make summary judgment inappropriate, if the plaintiff fails to offer proof on any

7

one of the four elements of negligence it is proper to enter summary judgment in favor of the defendant. *Peterson*, ¶ 24.

¶15 This case involves a ski accident, which in this state must be viewed through the lens of the MSRA, which defines duties and responsibilities of both skiers and ski area operators. "Montana's skier responsibility statutes make clear that the duty of reasonable care owed by a ski area operator to a skier 'must be viewed in the unique context of skiing.'" *Kopeikin v. Moonlight Basin Mgmt., LLC*, 90 F. Supp. 3d 1103, 1107 (D. Mont. 2015) (*Kopeikin 2015*) (quoting *Kopeikin v. Moonlight Basin Mgmt., LLC*, 981 F. Supp. 2d 936, 945 (D. Mont. 2013) (*Kopeikin 2013*)). The Legislature has set forth the purpose of the MSRA as follows:

> The legislature finds that skiing is a major recreational sport and a major industry in the state and recognizes that among the attractions of the sport are the inherent dangers and risks of skiing. The state has a legitimate interest in maintaining the economic viability of the ski industry by discouraging claims based on damages resulting from the inherent dangers and risks of skiing, defining the inherent dangers and risks of skiing, and establishing the duties of skiers and ski area operators.

Section 23-2-731, MCA. The MSRA sets forth the duties of a skier, defined by the MSRA as "a person who is using any ski area facility for the purpose of skiing, including but not limited to ski slopes and trails." Section 23-2-702(7), MCA. "A skier has the duty to ski at all times in a manner that avoids injury to the skier and others and to be aware of the inherent dangers and risks of skiing." Section 23-2-736(1), MCA. In addition, a skier:

> (a) shall know the range of the skier's ability and safely ski within the limits of that ability and the skier's equipment so as to negotiate any section of terrain or ski slope and trail safely and without injury or damage. A skier shall know that the skier's ability may vary because of ski slope and trail changes caused by weather, grooming changes, or skier use.

8

(b) shall maintain control of speed and course so as to prevent injury to the skier or others;

(c) shall abide by the requirements of the skier responsibility code that is published by the national ski areas association and that is posted as provided in 23-2-733;

(d) shall obey all posted or other warnings and instructions of the ski area operator; and

(e) shall read the ski area trail map and must be aware of its contents.

Section 23-2-736(2), MCA. Pursuant to the MSRA, "[a] skier shall accept all legal responsibility for injury or damage of any kind to the extent that the injury or damage results from inherent dangers and risks of skiing. Nothing in this part may be construed to limit a skier's right to hold another skier legally accountable for damages caused by the other skier." Section 23-2-736(4), MCA. The MSRA also defines the "inherent dangers and risks of skiing," which, as relevant here, include:

(b) snow conditions as they exist or as they may change, including ice, hardpack, powder, packed powder, wind pack, corn snow, crust, slush, cut-up snow, and machine-made snow of any depth or accumulation, including but not limited to any depth or accumulation around or near trees or snowmaking equipment;

. . .

(d) collisions with natural surface or subsurface conditions, such as bare spots, forest growth, rocks, stumps, streambeds, cliffs, trees, and other natural objects;

(e) collisions with lift towers, signs, posts, fences, enclosures, hydrants, water pipes, or other artificial structures and their components;

(f) variations in steepness or terrain, whether natural or the result of slope design, snowmaking, or snow grooming operations, including but not limited to roads, freestyle terrain, ski jumps, catwalks, and other terrain modifications;

9

. . .

(i) the failure of a skier to ski within that skier's ability; [and]

(j) skiing in a closed area or skiing outside the ski area boundary as designated on the ski area trail map[.]

Section 23-2-702(2), MCA.

¶16 In addition to setting forth the duties of a skier, the MSRA also sets forth duties of a ski area operator:

Consistent with the duty of reasonable care owed by a ski area operator to a skier, a ski area operator shall:

(a) mark all trail grooming vehicles by furnishing the vehicles with flashing or rotating lights that must be in operation whenever the vehicles are working or are in movement in the ski area;

(b) mark with a visible sign or other warning implement the location of any hydrant or similar equipment used in snowmaking operations and located on ski slopes and trails;

(c) maintain one or more trail boards at prominent locations at each ski area displaying a map of that area's network of ski slopes and trails, the boundaries of the ski area, and the relative degree of difficulty of the ski slopes and trails at that area;

(d) post a notice requiring the use of ski-retention devices;

(e) designate at the start of each day, by trail board or otherwise, which ski slopes and trails are open or closed and amend those designations as openings and closures occur during the day;

(f) post in a conspicuous location the current skier responsibility code that is published by the national ski areas association;

(g) post a copy of 23-2-736 in a conspicuous location; and

(h) mark designated freestyle terrain with a symbol recognized by the national ski areas association.

Section 23-2-733(1), MCA. There is no dispute that WSI was a "ski area operator," § 23-2-702(5), MCA, or that Mullee was a "skier," § 23-2-702(7), MCA, at the time of Mullee's accident and the MSRA applies to the present case. Under the MSRA, Mullee had an affirmative duty to "maintain control of speed and course so as to prevent injury" to himself, § 23-2-736(2)(b), MCA, and must "accept all legal responsibility for injury or damage of any kind to the extent that the injury or damage results from inherent dangers and risks of skiing." Section 23-2-736(4), MCA. Mullee's encounter with a steep embankment and subsequent collision with a rock is clearly an inherent danger and risk of skiing, § 23-2-702(2)(d), MCA, not artificially created by WSI, for which a skier must accept legal responsibility under the MSRA. Section 23-2-736(4), MCA.

¶17 Mullee urges this Court to go beyond simply the MSRA, though, contending WSI had a common law duty of reasonable care to maintain fencing which would catch him and prevent him from falling down the embankment and into the streambed, and its failure to not do so constitutes negligence. Mullee is correct, and WSI does not dispute, that the MSRA does not constitute an exhaustive list of the duties of skiers and/or ski area operators or entirely foreclose a finding of common law negligence should a ski operator breach its duty of reasonable care. *See Mead v. M.S.B., Inc.*, 264 Mont. 465, 474, 872 P.2d 782, 788 (1994) (finding a ski area operator's duties to a skier are not limited to only those specifically enumerated in the MSRA). But Mullee has failed to meet his burden to show WSI had a common law duty of care to install and/or maintain fencing capable of catching

11

him at the location of his accident, and therefore the District Court correctly granted WSI summary judgment on his negligence claim.[3]

¶18 Actionable negligence only arises from the breach of a legal duty. *Peterson*, ¶ 24. Whether a legal duty exists is a question of law to be decided by the court. *Howard*, ¶ 15. "In determining whether duty exists, we consider whether imposing a duty comports with public policy and 'whether the defendant could have foreseen that his conduct could have resulted in an injury to the plaintiff.'" *Bassett v. Lamantia*, 2018 MT 119, ¶ 10, 391 Mont. 309, 417 P.3d 299 (quoting *Fisher v. Swift Transp. Co.*, 2008 MT 105, ¶ 17, 342 Mont. 335, 181 P.3d 601). "Thus, duty is mainly a question of foreseeability—whether the person injured was within the scope of risk created by the defendant's action." *Bassett*, ¶ 10 (citing *Lopez v. Great Falls Pre-Release Servs.*, 1999 MT 199, ¶ 28, 295 Mont. 416, 986 P.2d 1081). "[I]n the absence of foreseeability, there is no duty and in the absence of duty, there is no negligence." *Poole v. Poole*, 2000 MT 117, ¶ 20, 299 Mont. 435, 1 P.3d 936.

¶19 That some skiers will fall or crash while skiing on a mountain operated by a ski area operator is undoubtedly foreseeable. "[I]t is clearly foreseeable that a skier, without skiing recklessly, may momentarily lose control or fall in an unexpected manner." *Clover v. Snowbird Ski Resort*, 808 P.2d 1037, 1047 (Utah 1991). But the basic fact it is inevitable

---

[3] Mullee presents a unique "duty to catch" argument, far different from the typical "duty to warn" claims involved in skiing accidents which renders the litany of out-of-state and/or federal cases he cites of little value to our analysis here. Moreover, WSI did "warn" skiers to not go over the embankment by placing a snow fence at the edge of the trail. Mullee had plenty of warning as he had skied the trail over a hundred times previously. In Mullee's deposition, he testified he "can always remember [the fence] being there" and knew it was a dangerous area below because "whenever they put up a fence is because there's usually a cliff."

that some skiers will fall somewhere on the mountain at some time does not mean that an accident in this specific spot was foreseeable. What is presented here is Mullee, an expert-level skier who had been skiing WMR since the 1970s and had traversed the turn coming out of the skier's tunnel over a hundred times without incident, losing control with enough force that he went over the edge of the embankment and tumbled down to the streambed below. That accident was not foreseeable to WMR, which has seen exactly one accident in this spot since 1947 despite millions of skier visits in that time—Mullee's on January 16, 2019. While Mullee was severely injured in his fall, the risk posed by the rocks near the streambed is not necessarily greater than the risk posed by any of the literally innumerable other natural hazards found across WMR's 3,000 acres—many of which are actually found on ski trails, unlike the rocks Mullee only hit because he lost control and left the ski trail.

¶20 Whether a duty exists is also a public policy question. *Bassett*, ¶ 10. "Foreseeability analysis also includes determining the moral blame attached to the defendant's conduct, the prevention of future harm, the extent of the burden imposed, the consequence to the public of imposing duty, and the availability and cost of insurance." *Gatlin-Johnson ex rel. Gatlin v. City of Miles City*, 2012 MT 302, ¶ 13, 367 Mont. 414, 291 P.3d 1129 (citing *Fisher*, ¶ 28).

¶21 Public policy considerations also favor not imposing a duty on WMR to install and maintain fencing to catch skiers who lose control and leave ski trails. Montana's Legislature has made clear in the MSRA that it is the public policy of this state to "maintain[] the economic viability of the ski industry by discouraging claims based on

13

damages resulting from the inherent dangers and risks of skiing[.]"  Section 23-2-731, MCA.  Those inherent dangers and risks of skiing are a major attraction to the sport. Section 23-2-731, MCA.  "[S]kiing is a quasi-dangerous, thrill-seeking sport, and if certain 'dangers' are removed, the interest in skiing would be greatly diminished."  *Bouchard v. Johnson*, 555 N.W.2d 81, 85 (N.D. 1996) (quoting *Schmitz v. Cannonsburg Skiing Corp.*, 428 N.W.2d 742, 744 (Mich. Ct. App. 1988)).  Skiing "is a sport that occurs on 'a mighty mountain, with fluctuation in weather and snow conditions that constantly change.'" *Kopeikin 2015*, 90 F. Supp. 3d at 1107 (quoting *Wright v. Mt. Mansfield Lift, Inc.*, 96 F. Supp. 786, 791 (D. Vt. 1951)).  "'[A] ski area operator cannot be expected to expend all of its resources making every hazard or potential hazard safe, assuming such an end is even possible,' or desirable."  *Kopeikin 2015*, 90 F. Supp. 3d at 1107 (quoting *Kopeikin 2013*, 981 F. Supp. 2d at 946).  There is no moral blame attached to WSI's conduct of not installing and/or maintaining fencing to catch skiers who fail to properly navigate the turn out of the tunnel and leave the ski trail.  There is also simply no evidentiary support to Mullee's claim that the embankment off of this beginner-level trail contained any heightened danger, as opposed to the innumerable other inherent risks and hazards across WMR, and requiring WSI to maintain "catch" fencing in any location where no known increased danger may lurk would place a massive burden on WSI.  In addition, removing such dangers from the mountain would greatly diminish the public's interest in skiing. *Bouchard*, 555 N.W.2d at 85.

¶22  Ultimately, it was the responsibility of the District Court to determine whether a legal duty existed in this case.  *Howard*, ¶ 15.  The District Court correctly recognized that

14

any disputed factual issues related to Mullee's crash were immaterial here because WSI did not owe a legal duty to maintain fencing to catch Mullee after he lost control and his negligence claim therefore failed. *See Peterson*, ¶ 24. Because WSI owed no legal duty to install and/or maintain fencing to catch Mullee from falling into the streambed after he lost control while skiing on a beginner-level trail, we need not discuss the elements of breach of duty, causation, or damages. *See Poole*, ¶ 26. Accordingly, the District Court's summary judgment order is affirmed.

## CONCLUSION

¶23 The District Court correctly granted summary judgment in favor of WSI as it did not owe a duty of reasonable care to install and maintain a fence which would catch Mullee after he lost control and went off of a beginner trail.

¶24 Affirmed.

/S/ INGRID GUSTAFSON

We Concur:

/S/ CORY J. SWANSON
/S/ KATHERINE M BIDEGARAY
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ JIM RICE